## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| GRASSY CREEK HOLDING COMPANY, LLC, ) | Case No. 08-25330 ABC |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| ) | |
| HARVEY SENDER, as Chapter 7 Trustee, ) | |
| ) | |
| Plaintiff, ) | Adv. Proc. No. 10-_____ |
| ) | |
| v. ) | |
| ) | |
| WEROCO, LLC, ) | |
| ) | |
| Defendant. ) | |

### COMPLAINT

Harvey Sender, as Chapter 7 Trustee for the bankruptcy estate of Grassy Creek Holding Company, LLC, for his Complaint, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      On September 30, 2008 (the "Petition Date"), Grassy Creek Holding Company, LLC (the "Debtor"), filed a voluntary petition under Chapter 11 of Title 11, U.S.C. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Colorado (this "Court").

2.      On December 4, 2008, the Debtor's bankruptcy case was converted to Chapter 7.

3.      Plaintiff, Harvey Sender (the "Trustee"), is the duly-appointed Chapter 7 Trustee in the Debtor's bankruptcy case.

4.      Defendant Weroco, LLC (the "Defendant"), has its principal address at P.O. Box 575, Hayden, Colorado 81639.

5.      As of the date of this Complaint, Defendant has not filed Articles of Organization, a Statement of Foreign Entity Authority, or any other documents under the name "Weroco, LLC" with the office of the Secretary of the State of Colorado.

6.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the automatic referral of bankruptcy matters from the United States District Court for the District of Colorado under D.Colo.L.Civ.R. 84.1.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

8.      This is a core proceeding as provided in 28 U.S.C. § 157(b)(2)(A), (B) and/or (O).

## GENERAL ALLEGATIONS

9.      The Trustee incorporates through this reference all of the prior allegations of this Complaint as if fully set forth herein.

10.     On July 30, 2009, the Trustee sold certain property of the Debtor's bankruptcy estate pursuant to the terms and conditions of this Court's "Findings of Fact, Conclusions of Law, and Order Under 11 U.S.C. § 363(f) Authorizing and Approving the Sale of Substantially All Assets Free and Clear of Liens, Claims, Interests and Encumbrances Pursuant to the Terms of the Asset Purchase Agreement Between the Trustee and Sage Creek Holdings, LLC" (the "Sale Order"), dated July 22, 2009.

11.     The property sold by the Trustee to Sage Creek Holdings (the "Purchaser") pursuant to the Sale Order included land referred to as "Parcel C" which is comprised of the following land in Township 6 North, Range 87 West of the 6th P.M., in Routt County, Colorado:

        Section 13: S/2 S/2
        Section 24: S/2, S/2N/2
        Section 25: ALL
        Section 26: S/2, S/2N/2, N/2NW/4, NW/4NE/4

2

Section 34: E/2SE/4, S/2NE/4

Section 35: E/2, E/2SE/4NW/4, E/2E/2SW/4, W/2SE/4NW/4, W/2E/2SW/4, W/2SW/4

12.      By instrument dated September 21, 2008 (nine days prior to the Petition Date),

the Debtor entered into an oil and gas lease with Defendant (the "Lease"), a true and accurate

photocopy of which is attached to this Complaint as Exhibit A.

13.      The Lease was not mentioned in the Debtor's bankruptcy schedules, including

Schedule G.

14.      The Lease was not recorded in the real estate records of Routt County, Colorado,

until April 27, 2009, approximately seven months after the Petition Date.

15.      The lands described in the Lease are located in Township 6 North, Range 86

West, 6th P.M., further described as follows:

Section 13: S/2S/2

Section 24: SE/4, SE/4NE/4, SW/4NW/4, W/2SW/4, SE/4SW/4

Section 25: E/2, NW/4, S/2SW/4, NE/4SW/4

Section 26: NW/4, S/2NE/4, NW/4NE/4, S/2SW/4

Section 34: E/2SE/4, S/2NE/4

Section 35: S/2, S/2NE/4, SE/4NW/4

16.      On its face, the Lease grants Defendant an interest in lands described as being in

Range 86 West, whereas Parcel C sold by the Trustee is situate in Range 87 West. Nevertheless,

each legal description identifies lands in the identical Sections (13, 24, 25, 26, 34 and 35). And

the same lands are described within each such section, except that the Lease does not include the

following approximately 480 acres that are included in the description of Parcel C:

Section 24: SE/4NW/4, NE/4SW4, SW/4NE/4

Section 25: NW/4SW/4

Section 26: SE/4, N/2SW/4

3

Section 35: N/2NE/4

17.     The Debtor owned no land in Range 86 West.  Accordingly, the post-petition recordation of the Lease did not give constructive notice to any subsequent purchaser of Parcel C, which is located in Range 87 West.

18.     There was a common grantor for the Lease and Parcel C, and the property descriptions in each document were substantially identical – other than the discrepancy between the Ranges 86 and 87.  These facts could put the Purchaser of Parcel C on inquiry notice concerning a possible scrivener's error concerning the identification of Range 86 in the Lease.

19.     The Trustee, as part of the Asset Purchase Agreement, agreed to assist Purchaser in clearing title defects post-closing.  Purchaser asserts that the Lease is such a title defect, and it is listed as an exception on Purchaser's title insurance policy for Parcel C.

20.     Defendant did not respond to the Trustee's efforts to resolve this matter prior to commencing this adversary proceeding.

## FIRST CLAIM FOR RELIEF

(Avoidance and Recovery of Lease; 11 U.S.C. §§ 544(a) and 550)

21.     The Trustee incorporates through this reference all of the prior allegations of this Complaint as if fully set forth herein.

22.     The Lease constitutes a transfer, or at a minimum an attempted transfer, of property of the Debtor.

23.     The Lease was not recorded in the Routt County real estate records at the Petition Date.

24.     The Trustee has the statutory rights of a bona fide purchase of real property from the Debtor at the time of the commencement of the bankruptcy case.

4

25.     A bona fide purchaser at the Petition Date would own the Debtor's property, including Parcel C, free and clear of Defendant's claim under the Lease.

26.     The Trustee is entitled to judgment against the Defendant avoiding the Lease pursuant to § 544(a) of the Bankruptcy Code.

27.     Defendant is the initial transferee of the Lease.

28.     The Trustee is entitled to recover the Lease from Defendant under § 550 of the Bankruptcy Code.

## SECOND CLAIM FOR RELIEF

(Avoidance and Recovery of Post-Petition Transfer, 11 U.S.C. §§ 549 and 550)

29.     The Trustee incorporates through this reference all of the prior allegations of this Complaint as if fully set forth herein.

30.     The Lease was a transfer, or at a minimum an attempted transfer, of property of the estate in the Debtor's bankruptcy case.

31.     The transfer of the Lease was not perfected until it was recorded, approximately seven months after the Petition Date, which perfection occurred after commencement of the Debtor's bankruptcy case.

32.     The Lease was not authorized under any provision of the Bankruptcy Code.

33.     The Lease was not authorized by the Court.

34.     The Trustee is entitled to avoid the Lease pursuant to § 549 of the Bankruptcy Code.

35.     Defendant is in the initial transferee of the Lease.

36.     The Trustee is entitled to recover the Lease from Defendant under § 550 of the Bankruptcy Code.

5

WHEREFORE, the Trustee respectfully requests entry of judgment against Defendant: (a) avoiding the Lease under § 544(a) of the Bankruptcy Code; (b) avoiding the Lease under § 549 of the Bankruptcy Code; (c) recovering the Lease for the benefit of the estate under § 550 of the Bankruptcy Code; (d) for costs and attorneys' fees as allowed by law; and (e) for such other relief as deemed just and appropriate.

Dated this 27th day of January 2010.

**LINDQUIST & VENNUM P.L.L.P.**


By: ___/s/ Harold G. Morris, Jr._____
        John C. Smiley, #16210
        Harold G. Morris, Jr., #8409
600 17th Street, Suite 1800 South
Denver, CO, 80202-5441
Telephone:  (303) 573-5900
Facsimile:  (303) 573-1956
Email:  jsmiley@lindquist.com
Email:  hmorris@lindquist.com

Counsel for Harvey Sender, Chapter 7 Trustee

Doc# 3155886\1

# EXHIBIT A

RECEPTION#: 686321, 04/27/2009 at 11:31:55 AM, 1 OF 5, R  $26.00 Doc Code:OGL
Kay Weinland, Routt County, CO

PRODUCERS 88-PAID UP
Rev. No. 1 (CR-Rockies)

# OIL AND GAS LEASE

This Oil and Gas Lease ("Lease") is made this  21st  day of  September , 2008  , by and between

**Grassy Creek Holding Company, LLC**  whose address is  **P.O. Box 774406, Steamboat Springs, CO 80477** ("Lessor",

whether one or more) and **Weroco, LLC** with an office at  **P.O. Box 575, Hayden, Colorado 81639**

("Lessee").


WITNESSETH, For and in Consideration of $25,000 DOLLARS, the covenants and agreements contained herein, and other good and valuable consideration and receipt and sufficiency of which are herby acknowledged, Lessor does hereby grant, demise, lease, and let exclusively unto said Lessee, with the exclusive rights for the purpose of mining, exploring by geophysical and other methods and operating for and producing therefrom oil and gas of whatsoever nature or kind (including coalbed gas), and laying pipelines, telephone and telegraph lines, building tanks, plants, power stations, roadways and structures thereon to produce, save and take care of said products (including dewatering of coalbed gas wells), and the exclusive surface or subsurface rights and privileges related in any manner to any and all such operations, and any and all other rights and privileges necessary, incident to, or convenient for the operation alone or conjointly with neighboring land for such purposes, all that certain tract or tracts of land situated in County of   Routt   ,State of   Colorado   , described to wit:

**Township 6 North, Range 86 West, 6th P.M.**
Section 13: S/2S/2
Section 24: SE/4, SE/4NE/4, SW/4NW/4, W/2SW/4, SE/4SW/4
Section 25: E/2, NW/4, S/2SW/4, NE/4SW/4
Section 26: NW/4, S/2NE/4, NW/4NE/4, S/2SW/4
Section 34: E/2SE/4, S/2NE/4
Section 35: S/2, S/2NE/4, SE/4NW/4

and containing   2,080.00   acres, more or less (the "Premises").

1. It is agreed that this Lease shall remain in full force for a term of  ten (10) years from this date ("Primary Term") and as long thereafter as oil or gas of whatsoever nature or kind is produced from the Premises or on acreage pooled or unitized therewith, or operations are continued as hereinafter provided. If, at the expiration of the Primary Term, oil or gas is not being produced from the Premises or on acreage pooled or unitized therewith but Lessee is then engaged in drilling, reworking or dewatering operations thereon, then this Lease shall continue in force so long as such operations are being continuously prosecuted. Operations shall be considered to be continuously prosecuted if not more than one hundred twenty (120) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well. If after discovery of oil or gas on the Premises or on acreage pooled or unitized therewith, the production thereof should cease from any cause after the primary term, this Lease shall not terminate if Lessee commences additional drilled, reworking or dewatering operations within one hundred twenty (120) days from date of cessation of production or from date of completion of a dry hole. If oil or gas shall be discovered and produced as a result of such operations at or after the expiration of the Primary Term, this Lease shall continue in force so long as oil or gas is produced from the Premises or on acreage pooled or unitized therewith.

2. This is a PAID-UP LEASE. In consideration of the payment made herewith, Lessor agrees that Lessee shall not be obligated, except as otherwise provided herein, to commence or continue any operations during the primary term. Lessee may at any time or times during or after the Primary Term surrender this Lease as to all or any portion of the Premises and as to any strata or stratum, by delivering to Lessor or by filing for record a release or releases, and be relieved of all obligations thereafter accruing as to the acreage surrendered.

3. The royalties to be paid by Lessee are: (a) on oil and other liquid hydrocarbons **fifteen percent (15 %)** of that produced and saved from said land, the same to be delivered at the wells, or to the credit of Lessor into the pipeline to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefore prevailing for the field where produced on the date of purchase; (b) on gas and the constituents thereof produced from said land and sold or used off the premises or in the manufacture of products therefrom, the market value at the well of **fifteen percent (15%)** of the product sold or used. On product sold at the well, the royalty shall be **fifteen percent (15%)** of the net proceeds realized from such sale. All royalties paid on gas sold or used off the premises or in the manufacture of products therefrom will be paid after deducting from such royalty Lessor's proportionate amount of all post-production costs, including but not limited to gross production and severance taxes, gathering and transportation costs from the wellhead to the point of sale, treating, compression, and processing. On product sold at the well, the royalty shall be **fifteen percent (15%)** of the net proceeds realized from such sale, after deducting from such royalty Lessor's proportionate amount of all the above post-production costs and expenses, if any.

4. Where gas from a well capable of producing gas (or from a well in which dewatering operations have commenced), is not sold or used after the expiration of the Primary Term, Lessee shall pay or tender as royalty to Lessor at the address set forth above One Dollar ($1.00) per year per net mineral acre, such payment or tender to be made on or before the anniversary date of this Lease next ensuing after the expiration of one hundred twenty (120) days from the date such well is shut in or dewatering operations are

RECEPTION#: 686321, 04/27/2009 at 11:31:55 AM, 2 OF 5 Doc Code:OGL, Kay Weinland, Routt County, CO

commenced and thereafter on or before the anniversary date of this Lease during the period such well is shut in or dewatering operations are being conducted.

5. If Lessor owns a lesser interest in the Premises than the entire and undivided fee simple estate therein, then the royalties (including any shut-in gas royalty) herein provided for shall be paid Lessor only in the proportion which Lessor's interest bears to the whole and undivided fee.

6. Lessee shall have the right to use, free of cost, gas, oil and water produced on the Premises for Lessee's operations thereon, except water from the wells of Lessor.

7. When requested by Lessor, Lessee shall bury Lessee's pipeline below plow depth.

8. No well shall be drilled nearer than 200 feet to the house or barn now on the Premises without written consent of Lessor.

9. Lessee shall pay for damages caused by Lessee's operations to growing crops on Premises.

10. Lessee shall have the right at any time to remove all machinery and fixtures (including casing) Lessee has placed on the Premises.

11. The rights of the Lessor and Lessee hereunder may be assigned in whole or part, with prior written consent. No change in ownership of Lessor's interest (by assignment or otherwise) shall be binding on Lessee until Lessee has been furnished with notice, consisting of certified copies of all recorded instruments or documents and other information necessary to establish a complete chain of record title from Lessor, and then only with respect to payments thereafter made. No other kind of notice, whether actual or constructive, shall be binding on Lessee. No present or future division of Lessor's ownership as to different portions or parcels of the Premises shall operate to enlarge the obligations or diminish the rights of Lessee, and all Lessee's operations may be conducted without regard to any such division. If all or any part of the Lease is assigned, no leasehold owner shall be liable for any act or omission of any other leasehold owner.

12. Lessee, at its option, is hereby given the right and power at any time and from time to time as a recurring right, either before or after production, as to all or any part of the Premises and as to any one or more of the formations thereunder, to pool or unitize the leasehold estate and the mineral estate covered by this Lease with other land, lease or leases in the immediate vicinity for the production of oil and gas, or separately for the production of either, when in Lessee's judgment it is necessary or advisable to do so, and irrespective of whether authority similar to this exists with respect to such other land lease or leases. Likewise units previously formed to include formations not producing oil or gas may be reformed to exclude such non-producing formations. The forming or reforming of any unit shall be accomplished by Lessee executing and filing of record a declaration of such unitization or reformation, which declaration shall describe the unit. Any unit may include land upon which a well has theretofore been completed or upon which operations for drilling have theretofore been commenced. Production, drilling, reworking or dewatering operations or a well shut in for want of a market anywhere on a unit which includes all or part of this Lease shall be treated as if it were production, drilling, reworking or dewatering operations or well shut in for want of a market under this Lease. In lieu of the royalties elsewhere herein specified, including shut-in gas royalties, Lessor shall receive royalties on production from such unit only on the portion of such production allocated to this Lease; such allocation shall be that proportion of the unit production that the total number of surface acres covered by this Lease and included in the Unit bears to the total number of surface acres in such Unit. In addition to the foregoing, Lessee shall have the right to unitize, pool, or combine all or any part of the Premises as to one or more of the formations thereunder with other lands in the same general area by entering into a cooperative or unit plan of development or operation approved by any governmental authority and, from time to time, with like approval, to modify, change or terminate any such plan or agreement and, in such event, the terms, conditions and provisions of this Lease shall be deemed modified to conform to the terms, conditions, and provisions of such approved cooperative or unit plan of development or operation and, particularly, all drilling and development requirements of this Lease, express or implied, shall be satisfied by compliance with the drilling and development of requirements of such plan or agreement, and this Lease shall not terminate or expire during the life of such plan or agreement. In the event that the Premises or any part thereof, shall hereafter be operated under any such cooperative or unit plan of development or operation whereby the production therefrom is allocated and not to any other tract of land; and royalty payments to be made hereunder to Lessor shall be based upon production only as so allocated. Lessor shall formally express Lessor's consent to any cooperative or unit plan of development or operation adopted by Lessee and approved by any governmental agency by executing the same upon request of Lessee.

13. All express or implied covenants of this Lease shall be subject to all Federal and State Laws, Executive Orders, Rules or Regulations, and this Lease shall not be terminated, in whole or in part, nor Lessee held liable in damages, for failure to comply therewith if compliance is prevented by, or if such failure is the result of, any such Law, Order, Rule or Regulation. Any delay or interruption caused by storm, flood, act of God or other event of force majeure shall not be counted against Lessee. If, due to the above causes or any cause whatsoever beyond the control of Lessee, Lessee is prevented from conducting operations hereunder, such time shall not be counted against Lessee, and this Lease shall be extended for a period of time equal to the time Lessee was so prevented , anything in this lease to the contrary notwithstanding.

14. Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the Lessee shall have the right at any time to redeem for Lessor by payment any mortgages, taxes or other liens on the above described lands, in the event of default of payment by Lessor, and be subrogated to the rights of the holder thereof, and the undersigned Lessors, for themselves and their heirs, successors and assigns, hereby surrender and release all right of dower and homestead in the Premises, insofar as said right of dower and homestead may in any way affect the purposes for which this Lease is made, as recited herein.

15. Should any one or more of the parties named as Lessor herein fail to execute this Lease, it shall nevertheless be binding upon all such parties who do execute it as Lessor. The word "Lessor", as used in this Lease, shall mean any one or more or all of the parties who execute this Lease or Lessor. All the provisions of this Lease shall be binding on the heirs, successors and assigns of Lessor and Lessee.

16. If at any time within the primary term of this lease and while the same remains in force and effect, Lessor receives any bona fide offer, acceptable to Lessor, to grant an addition lease (top lease) covering all or part of the aforedescribed lands, lessee shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing, and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such lease, and include a copy of the lease form to be utilized which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt, from Lessor, of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, lessor shall have the right to accept said offer.

RECEPTION#: 686321, 04/27/2009 at 11:31:55 AM, 3 OF 5 Doc Code:OGL, Kay Weinland, Routt County, CO

IN WITNESS WHEREOF, this instrument is executed as of the date first above written.

Signature(s)

GRASSY CREEK HOLDING COMPANY, LLC

By:

Name:

Title:     MANAGER

Taxpayer Identification or SS No.

20·1745469

(ACKNOWLEDGEMENT)

CORPORATE ACKNOWLEDGEMENT

STATE OF COLORADO                              )
                                               ) SS.
COUNTY OF        Routt                          )

The foregoing instrument was acknowledged before me this 19th day of September, 2008 by Roger A. Johnson, II. as of Grassy Creek Holding Company, LLC, a Colorado Limited Liability Company, on behalf of the company.

My Commission Expires:  6/30/2010

Notary Public

TWANA SULLINS
Notary Public
State of Colorado

RECEPTION#: 686321, 04/27/2009 at 11:31:55 AM, 4 OF 5 Doc Code:OGL, Kay Weinland, Routt County, CO

EXHIBIT "A" RIDER

ATTACHED TO AND MADE A PART OF OIL AND GAS LEASE, DATED SEPTEMBER 21, 2008, BY AND BETWEEN
GRASSY CREEK HOLDING COMPANY, LLC, LESSOR, AND WEROCO, LLC, LESSEE

Notwithstanding anything to the contrary in the Lease to which this Addendum is attached:

1.  Lessee shall indemnify and hold harmless Lessor and its successors, assigns, officers, directors, shareholders, employees and agents, from and against all claims for damage or injury (including death) to any persons or their property resulting from Lessee's operations under this lease, including but not limited to attorney's fees and expenses of litigation.

2.  Lessor and Lessee agree to cooperate with each other to meet their mutual objectives to provide for the production of oil and gas from the premises contemporaneously with changing surface usage from agricultural to residential or commercial development. Lessor agrees to consult with Lessee prior to any drilling activities as to location of drilling operations and ingress and egress. This shall include not less than two drillsites (150' by 300') per section of land and the necessary ingress and egress for such drillsites. Provided further, Lessee agrees that, in the absence of the written consent of Lessor, Lessee shall not locate a well within two hundred (200) feet of the area of Lessee's planned development as generally depicted on the plat of the Grassy Creek Site Plan, dated 4-28-2003, as drafted by Landmark Consultants, Inc. which by reference hereto is made a part hereof.

3.  Lessor agrees to commence drilling of a well on the Premises within Sixty (60) months of the date of this oil and gas lease. If such a well is not so commenced, this lease will expire as of the eighteen month anniversary date and will be of no further force or effect. Should such a well be commenced and subsequently completed as either a dry hole or a well capable of producing oil and or gas, during the five year primary term hereof there will be a continuous drilling obligation ("Primary Term Continuous Drilling Obligation") to drill wells on the Premises with no more than an eighteen (18) month period between the completion of the prior well until the commencement of the subsequent well, until all the acreage is earned. The area to be earned by each well ("Earned Area") shall consist of a 320.00 acre area in the vicinity of each drilled well to be designated by Lessee. Commence or commencement of drilling is defined as the start of drilling pad construction. Completion of a well is defined as the plugging and abandonment date, if the prior well is a dry hole or the date of completion is filed with the State of Colorado if the prior well is productive. If at any time, this Primary term Continuous Drilling Obligation is not preformed in accordance with the terms hereof, this lease will expire as of the next occurring eighteen month anniversary date as to lands not within an Earned Area and will be of no further force or effect as to the lands not previously earned.

4.  This lease shall terminate at the end of the Ten year primary term or upon the expiration date of an eighteen month Primary Term Continuous Drilling Obligation period that is in effect at the end of the primary term, whichever is the later date, as to as all lands not then included within an Earned Area unless on such date Lessee is engaged in drilling or reworking operations on the Premises. This lease shall not terminate so long thereafter as drilling or reworking operating are being diligently prosecuted with not more than a Twelve (12) month period between the completion of the prior well until the commencement of the subsequent well ("Extended Term Continuous Drilling Obligation") with Lessee to earn 320.00 acres as provided for above by the drilling of each well. If at any time, this Extended Term Continuous Drilling Obligation is not preformed in accordance with the terms hereof, this lease will expire as of the next occurring twelve month anniversary date as to lands not within an Earned Area and will no be of no further force or effect as to the lands not previously earned.

5.  If at any time the drilling of a well is commenced within less than eighteen months after the completion of the prior well during the Primary Term Continuous Drilling Obligation period or within less than twelve months after the completion of the prior well during the Extended Term Continuous Drilling Obligation period, Lessee shall receive a credit for the difference between the actual time period elapsing and applicable eighteen or twelve month time period specified herein. Such credited time, if any, shall be cumulative and Lessee shall have the right to use such cumulative time in postponing the date for the commencement deadline of further wells. This lease shall continue in force as to the Earned Acreage so long as oil or gas is produced form the Premises or on acreage pooled or unitized therewith. Lessee agrees that upon expiration of all or any part of this lease a release of those lands with be executed and recorded in the county records within sixty days from the expiration.

6.  The possession of firearms, alcohol, and dogs or the use of animal calls and air horns by employees, contractors or representatives of Lessee upon the leased premises shall be prohibited. No hunting or fishing shall be allowed. Access to the leased premises shall be limited to roads only and no individuals other than those conducting the business of Lessee shall be allowed upon the leased premises.

7.  The employees, contractors or representatives of Lessee shall give due consideration to livestock upon the leased premises and shall close all gates after use or shall post a gate guard at any such gate that is opened for a period longer than that necessary to allow for immediate traffic to pass so as to prevent any livestock from passing through the gates. Lessee will be allowed their own key for all gates accessing the Premises.

8.  Lessee shall use existing roads and existing wellsite pads whenever possible. New roadwork shall be constructed in accordance with Routt County Specifications whenever possible. Lessor and Lessee shall cooperate in allowing access by Lessee to the electrical services of Lessor upon the premises.

RECEPTION#: 686321, 04/27/2009 at 11:31:55 AM, 5 OF 5 Doc Code:OGL, Kay Weinland, Routt County, CO

9.  Lessee shall maintain existing and newly constructed roads to its wellsites to minimize excessive dust and avoid erosion. Areas prone to wear and tear shall be maintained with adequate road base and gravel of not more than two (2) inch diameter. Road markers shall be installed to assure effective road location identification. Water bars, culverts and double ditching shall be used to protect surface and shall be regularly maintained.

SIGNED FOR IDENTIFICATION:                     GRASSY CREEK HOLDING COMPANY, LLC

                                               BY: _____

                                               NAME: _____

                                               TITLE: _____MANAGER_____

Acknowledged before me this ____day of September 2008.

My commission expires: __6|30|2010__

_____
Notary Public

TWANA SULLINS
Notary Public
State of Colorado