# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>GRASSY CREEK HOLDING COMPANY, LLC,<br><br>Debtor. | Case No. 08-25330 ABC<br><br>Chapter 7 |
| HARVEY SENDER, as Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>WEROCO, LLC,<br><br>Defendant. | Adv. Proc. No. 10-01132 ABC |

## MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

Harvey Sender, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Grassy Creek Holding Company, LLC (the "Debtor"), for his Motion for Entry of Default and Default Judgment (this "Motion"), states:

1. On January 27, 2010, the Trustee filed his Complaint (the "Complaint") against Weroco, LLC (the "Defendant"). The Defendant has no registered office or registered agent in the State of Colorado. Its last known business address is P.O. Box 575, Hayden, Colorado 81639.

2. Through the Complaint, the Trustee seeks to avoid and recover under §§ 544(a), 549 and 550 of Title 11, U.S.C. (the "Bankruptcy Code"), the transfer of an oil and gas lease (the "Lease") by the Debtor to Defendant pursuant to an instrument dated September 21, 2008, but not recorded until April 27, 2009. A true copy of the Lease was attached to the Complaint as Exhibit A.

3. The Trustee served a Summons and the Complaint on the Defendant, on January 27, 2010, by first class mail pursuant to Fed.R.Bankr.P. 7004(b)(3). The Trustee also served the Summons and Complaint by certified mail, return receipt requested, in accordance with Fed.R.Bankr.P. 7004(a)(1), which specifically incorporates by reference Fed.R.Civ.P. 4(h)(1) and 4(e)(1), which in turn incorporate by general reference Colo.Rev.Stat. § 7-90-704(2).

4. The Summons and Complaint were mailed to the Defendant via the two service methods noted above at the Defendant's last known business address, which is the address set forth for the Defendant in the Lease.

5. The Return of Service evidencing service of process is on file in this Adversary Proceeding at Docket Entry No. 4.

6. Both the first class mail and the certified mail were returned to the Trustee's counsel with the notation "BOX CLOSED – UNABLE TO FORWARD – RETURN TO SENDER," on February 18, 2010.

7. Out of an abundance of caution, as explained in his Motion to Perfect Service by Publication Pursuant to Fed.R.Bankr.P. 7004(c) (Docket No. 5), filed March 11, 2010, the Trustee requested this Court's permission to also serve the Summons on the Defendant by publication.

8. On April 1, 2010, this Court entered its Order Granting Motion to Perfect Service by Publication Pursuant to Fed.R.Bankr.P. 7004(c), permitting the Trustee to perfect service of process on the Defendant by publication one time in the Steamboat Pilot.

9. As evidenced by the Trustee's Certificate of Publication, filed May 18, 2010, the Summons in the appropriate form was published in the Steamboat Pilot on April 11, 2010.

10. Accordingly, the last day for Defendant to respond to the Complaint was May 10, 2010. To date, the Defendant has failed to plead or otherwise defend in this Adversary Proceeding. Default is appropriate pursuant to Fed.R.Civ.P. 55(a), as applicable through Fed.R.Bankr.P. 7055.

11. Through this Motion, the Trustee also requests entry of default judgment against the Defendant pursuant to Fed.R.Civ.P. 55(b). The Affidavit of Harvey Sender, Trustee, in Support of this Motion is attached hereto as **Exhibit A** (the "Affidavit").

12. In his Affidavit, the Trustee attests to facts sufficient to support entry of default and a default judgment against the Defendant. Specifically, he establishes his standing and status as Trustee. The Trustee attests, that in accordance with his investigation of the Debtor's financial affairs, the Debtor made the transfer of the Lease, and recorded the Lease, as set forth in the Complaint and Affidavit.

13. The Court may take judicial notice of other pertinent facts evident from its file, such as the Petition Date in the Debtor's bankruptcy case being September 30, 2008.

WHEREFORE, the Trustee requests that this Court enter default and default judgment against the Defendant: (i) granting this Motion; (ii) avoiding the transfer of the Lease by the Debtor to the Defendant pursuant to §§ 544(a) and 549 of the Bankruptcy Code; (iii) recovering and preserving the Lease for the benefit of the estate pursuant to §§ 550 and 551 of the Bankruptcy Code and (iv) for such other relief as deemed just and appropriate.

2

Dated this 4th day of June, 2010.

        **LINDQUIST & VENNUM P.L.L.P.**

By:   /s/ Harold G. Morris, Jr.
      Harold G. Morris, Jr., #8409
      John C. Smiley, #16210
600 17th Street, Suite 1800 South
Denver, CO, 80202-5441
Telephone: (303) 573-5900
Facsimile: (303) 573-1956
Email: hmorris@lindquist.com

Counsel for Harvey Sender, Chapter 7 Trustee

The undersigned does hereby certify that on the 4th day of June, 2010, a true and correct copy of the foregoing **MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT** was served via United States mail, first class proper postage prepaid, addressed to:

Weroco, LLC
P.O. Box 575
Hayden, CO 81639

/s/ Lorri K. Parker

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>GRASSY CREEK HOLDING COMPANY, LLC,<br><br>Debtor. | Case No. 08-25330 ABC<br><br>Chapter 7 |
| HARVEY SENDER, as Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>WEROCO, LLC,<br><br>Defendant. | Adv. Proc. No. 10-01132 ABC |

**AFFIDAVIT OF HARVEY SENDER, TRUSTEE, IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

I, Harvey Sender, Chapter 7 Trustee of the bankruptcy estate of Grassy Creek Holding Company, LLC (the "Debtor"), depose and say under penalty of perjury:

1. On September 30, 2008 (the "Petition Date"), the Debtor filed its voluntary petition under chapter 11 of title 11, U.S.C. (the "Bankruptcy Code").

2. On December 4, 2008, the Debtor's bankruptcy case was converted to chapter 7.

3. I am the duly appointed Chapter 7 Trustee in the Debtor's bankruptcy case.

4. In conjunction with my duties as Chapter 7 Trustee, I have obtained the Debtor's bank and business records and I have reviewed the Debtor's Schedules and Statement of Financial Affairs. I have also retained counsel to review the Debtor's books and records.

5. Based on my review of the Debtor's records and financial affairs, I have determined that the Debtor granted an oil and gas lease (the "Lease") to Weroco, LLC (the "Defendant") by instrument dated September 21, 2008, which was nine days prior to the Petition Date.

6. The Lease was not mentioned in the Debtor's bankruptcy schedules, including Schedule G.

7. The Lease was not recorded in the real estate records of Routt County, Colorado, until April 27, 2009, approximately seven months after the Petition Date.

8. A true and correct copy of the Lease is attached hereto as Exhibit 1, evidencing the transfer and the recording of the Lease.

9. Pursuant to § 544(a)(3) of the Bankruptcy Code, I have the statutory rights of a bona fide purchaser of real property from the Debtor at the time of the commencement of the bankruptcy case. A bona fide purchaser at the Petition Date would own the Debtor's property free and clear of Defendant's claim under the unrecorded Lease.

10. The transfer of the Lease was not perfected until it was recorded, approximately seven months after the Petition Date. The Lease was not authorized under any provision of the Bankruptcy Code. The Lease was not authorized by the Court. Therefore, I am entitled to avoid the Lease pursuant to § 549 of the Bankruptcy Code.

11. The Defendant is the initial transferee of the Lease.

12. The Defendant is a business entity and is not an infant or incompetent person.

13. The Defendant is a business entity and is not in the military service or otherwise protected under the Servicemember's Civil Relief Act, 50 U.S.C. App. § 501, et seq.

Further Affiant sayeth not.

STATE OF COLORADO      )
                       )ss.
CITY & COUNTY OF DENVER )

_____
Harvey Sender

Subscribed and sworn to before me this 3rd day of June, 2010, by Harvey Sender.

Witness my hand and official seal.

My commission expires: 11/21/2012

_____
Notary Public

[SEAL: STEPHANIE J. PIERCE, NOTARY PUBLIC, STATE OF COLORADO]

My Commission Expires Nov. 21, 2012

2

DOCS-#3249725-v1

# EXHIBIT 1

RECEPTION#: 686321, 04/27/2009 at 11:31:55 AM, 1 OF 5, R $26.00 Doc Code:OGL
Kay Weinland, Routt County, CO

PRODUCERS 88-PAID UP
Rev. No. 1 (CR-Rockies)

## OIL AND GAS LEASE

This Oil and Gas Lease ("Lease") is made this  21st  day of  September , 2008 , by and between

**Grassy Creek Holding Company, LLC**  whose address is  **P.O. Box 774406, Steamboat Springs, CO 80477** ("Lessor",

whether one or more) and Weroco, LLC with an office at  P.O. Box 575, Hayden, Colorado 81639

("Lessee").

WITNESSETH, For and in Consideration of $25,000 DOLLARS, the covenants and agreements contained herein, and other good and valuable consideration and receipt and sufficiency of which are herby acknowledged, Lessor does hereby grant, demise, lease, and let exclusively unto said Lessee, with the exclusive rights for the purpose of mining, exploring by geophysical and other methods and operating for and producing therefrom oil and gas of whatsoever nature or kind (including coalbed gas), and laying pipelines, telephone and telegraph lines, building tanks, plants, power stations, roadways and structures thereon to produce, save and take care of said products (including dewatering of coalbed gas wells), and the exclusive surface or subsurface rights and privileges related in any manner to any and all such operations, and any and all other rights and privileges necessary, incident to, or convenient for the operation alone or conjointly with neighboring land for such purposes, all that certain tract or tracts of land situated in County of   Routt   ,State of    Colorado   , described to wit:

**Township 6 North, Range 86 West, 6th P.M.**
Section 13: S/2S/2
Section 24: SE/4, SE/4NE/4, SW/4NW/4, W/2SW/4, SE/4SW/4
Section 25: E/2, NW/4, S/2SW/4, NE/4SW/4
Section 26: NW/4, S/2NE/4, NW/4NE/4, S/2SW/4
Section 34: E/2SE/4, S/2NE/4
Section 35: S/2, S/2NE/4, SE/4NW/4

and containing   2,080.00   acres, more or less (the "Premises").

1. It is agreed that this Lease shall remain in full force for a term of  ten (10)  years from this date ("Primary Term") and as long thereafter as oil or gas of whatsoever nature or kind is produced from the Premises or on acreage pooled or unitized therewith, or operations are continued as hereinafter provided. If, at the expiration of the Primary Term, oil or gas is not being produced from the Premises or on acreage pooled or unitized therewith but Lessee is then engaged in drilling, reworking or dewatering operations thereon, then this Lease shall continue in force so long as such operations are being continuously prosecuted. Operations shall be considered to be continuously prosecuted if not more than one hundred twenty (120) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well. If after discovery of oil or gas on the Premises or on acreage pooled or unitized therewith, the production thereof should cease from any cause after the primary term, this Lease shall not terminate if Lessee commences additional drilled, reworking or dewatering operations within one hundred twenty (120) days from the date of cessation of production or from date of completion of a dry hole. If oil or gas shall be discovered and produced as a result of such operations at or after the expiration of the Primary Term, this Lease shall continue in force so long as oil or gas is produced from the Premises or on acreage pooled or unitized therewith.

2. This is a PAID-UP LEASE. In consideration of the payment made herewith, Lessor agrees that Lessee shall not be obligated, except as otherwise provided herein, to commence or continue any operations during the primary term. Lessee may at any time or times during or after the Primary Term surrender this Lease as to all or any portion of the Premises and as to any strata or stratum, by delivering to Lessor or by filing for record a release or releases, and be relieved of all obligations thereafter accruing as to the acreage surrendered.

3. The royalties to be paid by Lessee are: (a) on oil and other liquid hydrocarbons **fifteen percent (15 %)** of that produced and saved from said land, the same to be delivered at the wells, or to the credit of Lessor into the pipeline to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefore prevailing for the field where produced on the date of purchase; (b) on gas and the constituents thereof produced from said land and sold or used off the premises or in the manufacture of products therefrom, the market value at the well of **fifteen percent (15%)** of the product sold or used. On product sold at the well, the royalty shall be **fifteen percent (15%)** of the net proceeds realized from such sale. All royalties paid on gas sold or used off the premises or in the manufacture of products therefrom will be paid after deducting from such royalty Lessor's proportionate amount of all post-production costs, including but not limited to gross production and severance taxes, gathering and transportation costs from the wellhead to the point of sale, treating, compression, and processing. On product sold at the well, the royalty shall be **fifteen percent (15%)** of the net proceeds realized from such sale, after deducting from such royalty Lessor's proportionate amount of all the above post-production costs and expenses, if any.

4. Where gas from a well capable of producing gas (or from a well in which dewatering operations have commenced), is not sold or used after the expiration of the Primary Term, Lessee shall pay or tender as royalty to Lessor at the address set forth above One Dollar ($1.00) per year per net mineral acre, such payment or tender to be made on or before the anniversary date of this Lease next ensuing after the expiration of one hundred twenty (120) days from the date such well is shut in or dewatering operations are

RECEPTION#: 686321, 04/27/2009 at 11:31:55 AM, 2 OF 5 Doc Code:OGL, Kay Weinland, Routt County, CO

commenced and thereafter on or before the anniversary date of this Lease during the period such well is shut in or dewatering operations are being conducted.

5. If Lessor owns a lesser interest in the Premises than the entire and undivided fee simple estate therein, then the royalties (including any shut-in gas royalty) herein provided for shall be paid Lessor only in the proportion which Lessor's interest bears to the whole and undivided fee.

6. Lessee shall have the right to use, free of cost, gas, oil and water produced on the Premises for Lessee's operations thereon, except water from the wells of Lessor.

7. When requested by Lessor, Lessee shall bury Lessee's pipeline below plow depth.

8. No well shall be drilled nearer than 200 feet to the house or barn now on the Premises without written consent of Lessor.

9. Lessee shall pay for damages caused by Lessee's operations to growing crops on Premises.

10. Lessee shall have the right at any time to remove all machinery and fixtures (including casing) Lessee has placed on the Premises.

11. The rights of the Lessor and Lessee hereunder may be assigned in whole or part, with prior written consent. No change in ownership of Lessor's interest (by assignment or otherwise) shall be binding on Lessee until Lessee has been furnished with notice, consisting of certified copies of all recorded instruments or documents and other information necessary to establish a complete chain of record title from Lessor, and then only with respect to payments thereafter made. No other kind of notice, whether actual or constructive, shall be binding on Lessee. No present or future division of Lessor's ownership as to different portions or parcels of the Premises shall operate to enlarge the obligations or diminish the rights of Lessee, and all Lessee's operations may be conducted without regard to any such division. If all or any part of the Lease is assigned, no leasehold owner shall be liable for any act or omission of any other leasehold owner.

12. Lessee, at its option, is hereby given the right and power at any time and from time to time as a recurring right, either before or after production, as to all or any part of the Premises and as to any one or more of the formations thereunder, to pool or unitize the leasehold estate and the mineral estate covered by this Lease with other land, lease or leases in the immediate vicinity for the production of oil and gas, or separately for the production of either, when in Lessee's judgment it is necessary or advisable to do so, and irrespective of whether authority similar to this exists with respect to such other land lease or leases. Likewise units previously formed to include formations not producing oil or gas may be reformed to exclude such non-producing formations. The forming or reforming of any unit shall be accomplished by Lessee executing and filing of record a declaration of such unitization or reformation, which declaration shall describe the unit. Any unit may include land upon which a well has theretofore been completed or upon which operations for drilling have theretofore been commenced. Production, drilling, reworking or dewatering operations or a well shut in for want of a market anywhere on a unit which includes all or part of this Lease shall be treated as if it were production, drilling, reworking or dewatering operations or well shut in for want of a market under this Lease. In lieu of the royalties elsewhere herein specified, including shut-in gas royalties, Lessor shall receive royalties on production from such unit only on the portion of such production allocated to this Lease; such allocation shall be that proportion of the unit production that the total number of surface acres covered by this Lease and included in the Unit bears to the total number of surface acres in such Unit. In addition to the foregoing, Lessee shall have the right to unitize, pool, or combine all or any part of the Premises as to one or more of the formations thereunder with other lands in the same general area by entering into a cooperative or unit plan of development or operation approved by any governmental authority and, from time to time, with like approval, to modify, change or terminate any such plan or agreement and, in such event, the terms, conditions and provisions of this Lease shall be deemed modified to conform to the terms, conditions, and provisions of such approved cooperative or unit plan of development or operation and, particularly, all drilling and development requirements of this Lease, express or implied, shall be satisfied by compliance with the drilling and development of requirements of such plan or agreement, and this Lease shall not terminate or expire during the life of such plan or agreement. In the event that the Premises or any part thereof, shall hereafter be operated under any such cooperative or unit plan of development or operation whereby the production therefrom is allocated and not to any other tract of land; and royalty payments to be made hereunder to Lessor shall be based upon production only as so allocated. Lessor shall formally express Lessor's consent to any cooperative or unit plan of development or operation adopted by Lessee and approved by any governmental agency by executing the same upon request of Lessee.

13. All express or implied covenants of this Lease shall be subject to all Federal and State Laws, Executive Orders, Rules or Regulations, and this Lease shall not be terminated, in whole or in part, nor Lessee held liable in damages, for failure to comply therewith if compliance is prevented by, or if such failure is the result of, any such Law, Order, Rule or Regulation. Any delay or interruption caused by storm, flood, act of God or other event of force majeure shall not be counted against Lessee. If, due to the above causes or any cause whatsoever beyond the control of Lessee, Lessee is prevented from conducting operations hereunder, such time shall not be counted against Lessee, and this Lease shall be extended for a period of time equal to the time Lessee was so prevented, anything in this lease to the contrary notwithstanding.

14. Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the Lessee shall have the right at any time to redeem for Lessor by payment any mortgages, taxes or other liens on the above described lands, in the event of default of payment by Lessor, and be subrogated to the rights of the holder thereof, and the undersigned Lessors, for themselves and their heirs, successors and assigns, hereby surrender and release all right of dower and homestead in the Premises, insofar as said right of dower and homestead may in any way affect the purposes for which this Lease is made, as recited herein.

15. Should any one or more of the parties named as Lessor herein fail to execute this Lease, it shall nevertheless be binding upon all such parties who do execute it as Lessor. The word "Lessor", as used in this Lease, shall mean any one or more or all of the parties who execute this Lease or Lessor. All the provisions of this Lease shall be binding on the heirs, successors and assigns of Lessor and Lessee.

16. If at any time within the primary term of this lease and while the same remains in force and effect, Lessor receives any bona fide offer, acceptable to Lessor, to grant an addition lease (top lease) covering all or part of the aforedescribed lands, lessee shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing, and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such lease, and include a copy of the lease form to be utilized which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt, from Lessor, of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, lessor shall have the right to accept said offer.

RECEPTION#: 686321, 04/27/2009 at 11:31:55 AM, 3 OF 5 Doc Code:OGL, Kay Weinland, Routt County, CO

IN WITNESS WHEREOF, this instrument is executed as of the date first above written.

Signature(s)

GRASSY CREEK HOLDING COMPANY, LLC

By: _____
Name: Roger A. Johnson, II
Title: MANAGER

Taxpayer Identification or SS No.

20-1745469

(ACKNOWLEDGEMENT)

CORPORATE ACKNOWLEDGEMENT

STATE OF COLORADO )
                  ) SS.
COUNTY OF Routt   )

The foregoing instrument was acknowledged before me this 19th day of September, 2008 by Roger A. Johnson, II as of Grassy Creek Holding Company, LLC, a Colorado Limited Liability Company, on behalf of the company.

My Commission Expires: 6/30/2010

_____
Notary Public

TWANA SULLINS
Notary Public
State of Colorado

EXHIBIT "A" RIDER

ATTACHED TO AND MADE A PART OF OIL AND GAS LEASE, DATED SEPTEMBER 21, 2008, BY AND BETWEEN GRASSY CREEK HOLDING COMPANY, LLC, LESSOR, AND WEROCO, LLC, LESSEE

Notwithstanding anything to the contrary in the Lease to which this Addendum is attached:

1. Lessee shall indemnify and hold harmless Lessor and its successors, assigns, officers, directors, shareholders, employees and agents, from and against all claims for damage or injury (including death) to any persons or their property resulting from Lessee's operations under this lease, including but not limited to attorney's fees and expenses of litigation.

2. Lessor and Lessee agree to cooperate with each other to meet their mutual objectives to provide for the production of oil and gas from the premises contemporaneously with changing surface usage from agricultural to residential or commercial development. Lessor agrees to consult with Lessee prior to any drilling activities as to location of drilling operations and ingress and egress. This shall include not less than two drillsites (150' by 300') per section of land and the necessary ingress and egress for such drillsites. Provided further, Lessee agrees that, in the absence of the written consent of Lessor, Lessee shall not locate a well within two hundred (200) feet of the area of Lessee's planned development as generally depicted on the plat of the Grassy Creek Site Plan, dated 4-28-2003, as drafted by Landmark Consultants, Inc. which by reference hereto is made a part hereof

3. Lessor agrees to commence drilling of a well on the Premises within Sixty (60) months of the date of this oil and gas lease. If such a well is not so commenced, this lease will expire as of the eighteen month anniversary date and will be of no further force or effect. Should such a well be commenced and subsequently completed as either a dry hole or a well capable of producing oil and or gas, during the five year primary term hereof there will be a continuous drilling obligation ("Primary Term Continuous Drilling Obligation") to drill wells on the Premises with no more than an eighteen (18) month period between the completion of the prior well until the commencement of the subsequent well, until all the acreage is earned. The area to be earned by each well ("Earned Area") shall consist of a 320.00 acre area in the vicinity of each drilled well to be designated by Lessee. Commence or commencement of drilling is defined as the start of drilling pad construction. Completion of a well is defined as the plugging and abandonment date, if the prior well is a dry hole or the date of completion is filed with the State of Colorado if the prior well is productive. If at any time, this Primary term Continuous Drilling Obligation is not preformed in accordance with the terms hereof, this lease will expire as of the next occurring eighteen month anniversary date as to lands not within an Earned Area and will be of no further force or effect as to the lands not previously earned.

4. This lease shall terminate at the end of the Ten year primary term or upon the expiration date of an eighteen month Primary Term Continuous Drilling Obligation period that is in effect at the end of the primary term, whichever is the later date, as to as all lands not then included within an Earned Area unless on such date Lessee is engaged in drilling or reworking operations on the Premises. This lease shall not terminate so long thereafter as drilling or reworking operating are being diligently prosecuted with not more than a Twelve (12) month period between the completion of the prior well until the commencement of the subsequent well ("Extended Term Continuous Drilling Obligation") with Lessee to earn 320.00 acres as provided for above by the drilling of each well. If at any time, this Extended Term Continuous Drilling Obligation is not preformed in accordance with the terms hereof, this lease will expire as of the next occurring twelve month anniversary date as to lands not within an Earned Area and will no be of no further force or effect as to the lands not previously earned.

5. if at any time the drilling of a well is commenced within less than eighteen months after the completion of the prior well during the Primary Term Continuous Drilling Obligation period or within less than twelve months after the completion of the prior well during the Extended Term Continuous Drilling Obligation period, Lessee shall receive a credit for the difference between the actual time period elapsing and applicable eighteen or twelve month time period specified herein. Such credited time, if any, shall be cumulative and Lessee shall have the right to use such cumulative time in postponing the date for the commencement deadline of further wells. This lease shall continue in force as to the Earned Acreage so long as oil or gas is produced form the Premises or on acreage pooled or unitized therewith. Lessee agrees that upon expiration of all or any part of this lease a release of those lands with be executed and recorded in the county records within sixty days from the expiration.

6. The possession of firearms, alcohol, and dogs or the use of animal calls and air horns by employees, contractors or representatives of Lessee upon the leased premises shall be prohibited. No hunting or fishing shall be allowed. Access to the leased premises shall be limited to roads only and no individuals other than those conducting the business of Lessee shall be allowed upon the leased premises.

7. The employees, contractors or representatives of Lessee shall give due consideration to livestock upon the leased premises and shall close all gates after use or shall post a gate guard at any such gate that is opened for a period longer than that necessary to allow for immediate traffic to pass so as to prevent any livestock from passing through the gates. Lessee will be allowed their own key for all gates accessing the Premises.

8. Lessee shall use existing roads and existing wellsite pads whenever possible. New roadwork shall be constructed in accordance with Routt County Specifications whenever possible. Lessor and Lessee shall cooperate in allowing access by Lessee to the electrical services of Lessor upon the premises.

RECEPTION#: 686321, 04/27/2009 at 11:31:55 AM, 5 OF 5 Doc Code:OGL, Kay Weinland, Routt County, CO

9. Lessee shall maintain existing and newly constructed roads to its wellsites to minimize excessive dust and avoid erosion. Areas prone to wear and tear shall be maintained with adequate road base and gravel of not more than two (2) inch diameter. Road markers shall be installed to assure effective road location identification. Water bars, culverts and double ditching shall be used to protect surface and shall be regularly maintained.

SIGNED FOR IDENTIFICATION:

GRASSY CREEK HOLDING COMPANY, LLC
BY: _____
NAME: _Ronald A. Townsend_
TITLE: _MANAGER_

Acknowledged before me this ____ day of September 2008.

My commission expires: 6/30/2010

_Twana Sullins_
Notary Public

TWANA SULLINS
Notary Public
State of Colorado